## SUPREME COURT—IN BANCO.

### APRIL TERM—1874.

*Allen, Ch. J., Harris and Judd, J. J.*

### ISAAC HART KAPUNIAI *vs.* KEKUPU, (W.)

WHEN a LOST DEED, unrecorded, is set up for basis of title it is necessary that there should be presented clear proof of the execution of the deed and proof of its contents sufficient to enable the Court to determine the character of the instrument.

Justice Harris delivered the decision of the Court.

Case removed to the Supreme Court, jury waived, from the Circuit Court Fourth Judicial Circuit, by consent.

This is an action of ejectment to recover a small piece of land situated at Koloa, Island of Kauai. The land originally belonged to one Kapuniai, who had an award for it.

The plaintiff was the adopted son of the said Kapuniai, who by his will left certain property to his wife, E. Kewalo, and made the plaintiff his residuary legatee.

This will was executed, 2d of October, 1857, and was proven 22d of September, 1858, and the plaintiff says that the property is his by virtue of that will.

The defendant is the widow of one Paihewa, who was a cousin of the aforesaid Kapuniai, or, as the Hawaiians call

Isaac Hart Kapuniai *v.* Kekupu (w.)

him, a brother. It is in evidence that they lived together in a brotherly manner, and it is alleged that Kapuniai gave to Paihewa the land in question and executed for it a deed in consideration of love and affection, in the presence of two witnesses, who are since dead, and the deed has been lost and no record made of it.

Regarding the validity of such a defence, if the lost deed can be proven, there can be no question, and the whole question before this Court is whether the deed is so proven. The law is undoubted that it will be necessary that there should be presented clear proof of the execution of the deed, and proof of its contents sufficient to enable the Court to determine the character of the instrument. This principle is so clear as not to need the citation of any authority.

The frequency with which the Hawaiian occupies the land of a near relative or friend, and builds his house upon it without having any other right in the land than a mere permissive occupancy, takes away from such occupancy the significance that it might have in other communities, and at the same time imposes upon the Court the duty of extraordinary caution, lest temptation should be holden out to supply testimony many years after the death of the owner to establish a title in the land when the right of occupancy was only a permissive one. The loss of papers in this case is most remarkable. They lost their deed, and they lost both their leases, and appear to have mislaid their land commission award; and this misfortune seems to have attached equally to plaintiff and defendant, for the plaintiff has lost his petition off the file. So likewise the possession of papers, among intimate relations in this country, would furnish very little evidence to support the presumption that they were accompanied by a deed which was afterwards lost. Again, the defendant says that the fact that Kapuniai did not mention in his will the land in question raises a presumption in her favor. This can hardly be so, because he only mentions the

71

details of the property which he bequeathed to his wife, and left the remainder to this plaintiff without particularizing any property whatsoever: So that the case must be decided upon the weight and efficacy of the positive testimony given to support the existence of the deed, and to describe its contents. The land commission award, upon which the title of this land rests, is not placed before the Court, but we have taken pains to supply that deficiency by a copy. It will be found by reference to it that the award is for two divisions of land, and the first witness, Kahananui, says that the deed was for the Ili of Wailaau, which would convey the land in its entirety, or so much of it as Kapuniai owned (testimony page second). The second witness, Kalaau, states it was a deed of the land of Wailaau; this again would carry the whole of Wailaau or both the apanas. Now the testimony of James Munden is in effect that he had occasion to lease a piece of land towards the road, as close to the road as he could get it; he went to Paihewa for it, and Paihewa said it belonged to Isaac Hart. This is sought to be explained by the counsel at bar by showing that the land on which the house stands is not near the road, and he supposes therefore that it was another piece of land. But the only judgment the Court could give would be, if judgment should be for defendant, that a deed had been lost conveying the whole of "Wailaau"; therefore, if Paihewa did not own that piece of Wailaau by the force of the deed now set up, he did not own any, or, in other words, if the judgment should be that he owned the piece of land on which the house now stands, it would likewise be (by the testimony) that he owned all the rest. The witness Kaanaana says that the deed called for the kuleana of Wailaau, and did not mention the number of acres, but adds that the deed did not comprise the whole; the question arises then how much did it comprise? Again, if the possession of the land commission award by Paihewa would be evidence of his title in the first piece of land, it

Isaac Hart Kapuniai *v.* Kekupu (w.)

would be likewise evidence of his title in the second piece, which is not claimed.

So it seems very clear that the operative part of the deed is not testified to with sufficient clearness and certainty to enable the Court to make a judgment. It would therefore appear unnecessary to examine whether or not there is sufficient evidence to establish the loss of the deed, yet we have thought it advisable to make a few observations on that subject.

By the testimony it is made evident that Paihewa was a man of education; he was secretary to the governor and knew the law. If so, he must have known the necessity of putting his deed on record; for it is claimed that the deed was given in 1849, and was in existence at least up to Kapuniai's death (eight years). Now the law in force at that time was as follows—(see vol. 1, page 248, section 7): "All deeds of landed property shall be recorded within thirty days after the execution thereof." Section 9: "No court of justice shall take *judicial* cognizance of any instrument required by law to be recorded which shall be not certified so to have been by the Registrar of Conveyances." This raises a great improbability that a man of Paihewa's education and knowledge of business would allow such a deed, as it is contended he had, to remain unrecorded; and though it may be a fact that he did so, yet the testimony to overcome that improbability must be very clear. In reviewing the testimony one is struck with the minuteness with which the witnesses remember immaterial facts which occurred twenty years before—as for instance, the color of the paper; which witness signed first; if it did rain or did not rain; the remarks of Puniai's wife "that she thought it was her land;" that it was in the afternoon of the day; that Kapuniai was sitting outside of the door and Kewalo his wife was inside; all of which may be true, but in most minds it goes very strongly to discredit the testimony; though we all know that

Isaac Hart Kapuniai *v.* Kekupu (w.)

people of the description of mind of the witnesses in this case are very apt to think it necessary to reply definitely to every question. The cross-examination appears to have been severe, and if accurately taken, has shaken the two principal witnesses to a considerable degree—as for instance, Kaulaau says at one time the deed was given before the small-pox, and another time, before the measles. It is true the measles were before the small-pox, but the idea to be conveyed is that the small-pox was an epoch and consequently when he says before the small-pox he meant to say about that time but before it. It is said that Paihewa leased the land to Alo; that deed is also lost, but Alo had a copy, and where is it? he says that Paihewa leased the land to Akoni; and that lease is also lost. Akoni had a copy, and where is it? Kaanana, the same witness, says that Kapuniai and Paihewa lived like brothers. The one used to do what he liked with the other's things without asking anybody about it. This would be a sufficient explanation for every act of Paihewa's without supposing that the land was his own. Again, the same witness says that the present plaintiff sometime after Paihewa's death, leased the land to Alo, and at that time said that he would divide the money with the little girl. It appears this might be about 1860, and if it is true, then it was a clear assertion of a right of property by the present plaintiff. The witness goes on to say that Kalalua one of the witnesses to the deed signed two initials. Mahelona signed with an " M." while Kahananui swore that Mahelona signed his name " K. Mahelona." We are of the opinion that in view of all the circumstances, both of the case and of the country, the deed has not been proven. But if the parties shall not be able to make an arrangement between themselves on the principle of an implied contract to pay for the house unless Paihewa or his heirs occupy it, the Court will hear testimony and argument upon that subject at the next July term, if the counsel see fit to present

any, before causing final judgment to be entered in the case, and the clerk will place the cause on the calendar for that purpose.

At the July term, counsel for both parties having come to an agreement in regard to the house on the land, judgment is now rendered for the plaintiff with costs.

Honolulu, July 9th, 1874.